CYNTHIA L. SHOFF, Petitioner-Appellant, v. DANNY R. SHOFF, Respondent-Appellee.

Fifth District    No. 5—88—0181

Opinion filed January 25, 1989.

---

Endicott & Finch, of Carmi, for appellant.

Mark R. Stanley, of Stanley Law Office, of Carmi, for appellee.

PRESIDING JUSTICE WELCH delivered the opinion of the court:

Appellant, Cynthia L. Shoff, appeals from an order of the circuit court of White County, entered March 28, 1988, modifying a child custody order previously entered in a proceeding dissolving her marriage to appellee, Danny R. Shoff, and entering a judgment against appellee for past-due child support. We affirm.

The parties were divorced by a Nevada State court on July 22, 1981. Appellant was granted custody of the only child of the marriage, Christy, who was born December 18, 1979. Appellee was granted reasonable visitation rights and ordered to pay child support in the amount of $150 per month.

In March 1981, appellee and the minor child moved to White County, Illinois. Appellant moved there shortly thereafter, and the Nevada divorce decree was properly registered with the circuit court of White County on September 18, 1981. At the same time, the parties agreed to modify the visitation provisions of the divorce decree to accommodate appellant's intention to move with the child to the State of Florida. The circuit court of White County accordingly ordered the divorce decree modified to allow visitation by appellee for 60 consecutive days between June and September of every year, and for reasonable visitation at other times. The child continued to live with appellee until November 1981, when she was sent to live with her mother in Florida. In November 1984, the child was returned to Illinois where she has continued to reside.

Between September 1983 and August 1986, appellant made numerous attempts to collect child support from appellee. Although appellee was repeatedly ordered by the circuit court of White County to pay past-due and future child support, appellee remained delinquent in

his payments. Admittedly, the child has been in the exclusive physical custody of appellee since November 1984 and he has provided for all of her needs.

On November 3, 1986, appellee filed a petition for temporary and permanent custody of the parties' minor child, Christy. Notice of the hearing on the petition for temporary custody was duly mailed to appellant by appellee's attorney; however, appellant failed to appear at the hearing. On November 25, 1986, the circuit court of White County entered an order on both appellee's petition for temporary custody and on appellant's most recent petition for rule to show cause for appellee's failure to pay child support. The court found that it was in the best interest of the minor child that temporary custody be placed with appellee, and so ordered. The order also found that appellee was in arrears in child support in the amount of $3,050 and entered judgment in that amount, but ordered that execution on the judgment be stayed for a period of 30 days. The cause was set for hearing on the petition for permanent custody.

On December 2, 1986, appellant filed a petition for rule to show cause for appellee's failure to pay child support and for his wilful and contumacious refusal to return the minor child to the appellant. On the same date, appellant also filed a petition to vacate the temporary custody order, claiming that it was not in accordance with the law and that she had not received required notice of the hearing.

The cause came on for hearing on February 5, 1988. Appellee testified that he lives with his wife, Janice, his son, Aaron and his daughter, Christy, in Herrin, Illinois. They live in a three-bedroom house, where Christy has her own room. The house is fully furnished.

Appellee has worked at Marion penitentiary as a correctional officer since April 1984, where he earns a gross salary of $20,000 to $25,000 per year. Appellee has provided for all of Christy's needs since November 1984.

Christy was eight years old at the time of the hearing and had lived with appellee and his family since November 1984. Appellant had made no request to have the child returned to her during that period of time. From October or November 1981 until November 1984, when Christy lived primarily with her mother in Florida, she also visited frequently and for extended periods of time with appellee.

Christy gets along very well in her new home and with her stepmother. Appellee explained that Christy was only four years of age when she came to live with appellee and his wife. Appellee and his wife had been married three years at the time of the hearing. Christy has a brother, Aaron, born October 8, 1984.

Christy has adjusted very well to her school and community. Christy was in the second grade and was a good student earning mostly B's. She is a member of Brownies and is proud of the cookies she has sold. She has many friends in Herrin with whom she rides bicycles. She has friends stay overnight at her house and she stays overnight at their houses.

Appellee described his relationship with Christy as very good. He stated that she consults him on problems at school and other matters. He loves Christy very much. Appellee described Christy as happy.

With regard to child support, appellee testified that he could not prove that he had made any child support payments since November 1984. He admitted that appellant had made numerous attempts to collect child support. He testified that he had been unemployed from September 1981 until sometime in 1983.

Appellant testified as an adverse witness pursuant to section 2—1102 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1102). She stated that other than one weekend, appellee had never denied her visitation with Christy. She has never requested appellee to return the child to her. She admitted that Christy was well cared for at appellee's home. She also admitted that in October or November 1984, while Christy was in appellant's custody, the child welfare agency in Florida had taken custody of Christy because appellant had left her home alone too long. This is how Christy came to be in appellee's custody in November 1984. Appellant testified that she receives approximately $600 every two weeks from her boyfriend in return for helping out in his seafood business. Her boyfriend gives her just enough money every two weeks to pay her household expenses.

Appellant also testified in her own case. She testified to her repeated efforts to collect child support payments from appellee. She explained the reason she had relinquished custody of Christy in the fall of 1984. In October 1984, she lost her job and was extremely upset. She picked Christy up from school and took her home. That evening, she left Christy home alone while she went for a drive to think things through. This was the reason the Florida child welfare agency took custody of Christy. Christy had been in bed, and appellant had assumed she would be all right, as Christy knew all the neighbors. Appellant explained, however, that she had already decided prior to this to allow Christy to come to Illinois to live with her father for a while. However, she did not intend for it to be permanent. Appellant lives alone in a furnished, two-bedroom home in Florida.

Appellant did not visit with Christy during 1985 or 1986. Appellant only visited with Christy in March 1987 for 7 to 10 days, and

again in August 1987 for 7 to 10 days.

With regard to her past employment, appellant testified that prior to November 1984, she had been employed for a year making $5.35 per hour, 40 hours per week. She lost that job in November 1984, but found another job within two weeks. She made $5.75 or $6 per hour working 40 hours per week. After a year and a half, she again changed jobs and began making $7 per hour. She continued to make $7 per hour until she began working for her boyfriend in August 1987. She received a child support payment of $1,000 in 1987, which was appellee's income tax refund.

The child, Christy, was interviewed in chambers by the trial court, with both counsel present. She stated that she had been four years old when she came to live with her father. She was in kindergarten when she first returned to Illinois. She turned five at her father's house. They had a birthday party for her at a pizza restaurant in Marion. She calls her stepmother "Mom." She enjoys school and earns good grades. She stated that she has no friends who live very close to her; she must go to a different neighborhood and doesn't really have anyone to play with. She is involved in Brownies, is going to take ballet lessons and has taken gymnastics lessons. She also played in a softball league. She expected to get to live with her mother because most girls live with their mothers, while most boys live with their fathers. She wants to live with her mother, and has wanted to for a long time. She could not give any reason for her preference for living with her mother other than stating that she loved her mother a lot. She stated that she also loved her father. She stated that her father has another child and her mother has no one. She stated that she would miss her little brother if she went to live with her mother.

At the conclusion of the hearing, the trial court found that appellee had made child support payments of $75 in September 1984, $75 in October 1984, $1,000 in March 1985, and $1,000 in 1987, for a total of $2,150. The court found that when the temporary custody order was entered in November 1986, appellee's support obligation terminated. Thus, appellee was obligated to pay child support in the amount of $150 per month from August 1, 1981, through November 1, 1986, for a total of $9,600. He had made total payments of $2,150. The court therefore entered a judgment of $7,450 against appellee and in favor of appellant. The court ordered appellee to pay appellant the sum of $250 per month on the judgment, but suspended the order until such time as a hearing could be held to determine what amount, if any, appellant would be required to pay to appellee as child support.

■ With respect to custody, the trial court properly found that

sections 610(b) and 602 of the Illinois Marriage and Dissolution of Marriage Act apply. (Ill. Rev. Stat. 1985, ch. 40, pars. 610(b), 602.) Section 610(b) provides that a court shall not modify a custody judgment unless it finds by clear and convincing evidence, upon facts that have arisen since, or were unknown at the time of, the prior custody order, that a change has occurred in the circumstances of the child or his custodian and that modification is necessary to serve the best interest of the child. (Ill. Rev. Stat. 1985, ch. 40. par. 610(b).) Section 602 sets forth certain factors to be considered in determining the best interest of the child, including the wishes of the child's parents, the wishes of the child, the interaction and interrelationship of the child with his parents, his siblings and any significant others, and the child's adjustment to his home, school and community. Ill. Rev. Stat. 1985, ch. 40, par. 602.

In the instant case, the trial court found that a change had occurred in the circumstances of the child and her custodian in that the custodial parent (appellant) had voluntarily surrendered custody of the child to appellee in November 1984, had subsequently had no contact with the child until 1987, and then had had only limited visitation. With respect to the best interests of the child, the court found that both parents wanted custody of the child. Although the child stated that she preferred to live with her mother, there was no indication that she did not like living with her father. The court found the child to be well-adjusted, happy, normal and healthy and noted that this spoke well of her present environment. She was well adjusted to her home, school and community and was quite active. The child's interaction and relationship with her family was warm, loving and affectionate and she had a stable, healthy environment. The trial court pointed out that appellant had failed to take any interest in the child from November 1984 until March 1987, although she had had sufficient income to visit with the child. Thus, the trial court found that appellee had met his burden of proof by showing by clear and convincing evidence that a change in circumstances had occurred and that it was in the best interest of the child that permanent custody be placed in appellee.

Appellant appeals, arguing that appellant's relinquishment of custody to appellee was not a sufficient change in circumstances to warrant a modification in custody and that the modification in custody is not in the best interest of the child. She argues that the court erred in equating her leaving the child with appellee because of financial difficulties with the child's becoming integrated into appellee's family and by giving this factor controlling weight. She argues that there is

a legislative presumption in favor of maintaining custody in the present custodian and against modification.

■■ We think the trial court properly found, by clear and convincing evidence, that a change in circumstances had occurred and that modification of custody was in the best interest of the child. Although appellant retained legal custody of the child, she relinquished physical custody of the child to appellee in November 1984, when the child was only four years of age. The child continued to live with appellee until the time of the hearing, when she was eight years of age. During the almost four years in which she lived with appellee, the child saw appellant only on two occasions in 1987 and only for brief periods of time. During that time, the child became well integrated into her new family, home, school and community. The trial court did not err in finding this to be a material change in circumstances relating to the child's best interest sufficient to warrant a modification in custody.

■■■ Nor do we think the trial court erred in finding that modification of custody was in the best interest of the child. The trial court carefully considered each of the factors set forth in section 602 of the Illinois Marriage and Dissolution of Marriage Act. (Ill. Rev. Stat. 1985, ch. 40, par. 602.) The court did not give controlling weight to the child's integration into appellee's family, but properly considered it as one of the factors in determining whether modification of custody was in the best interest of the child. (See *In re Marriage of Wechselberger* (1983), 115 Ill. App. 3d 779, 788, 450 N.E.2d 1385, 1391.) In doing so, the court properly considered the child's interaction and interrelationships with her father, stepmother and brother, and her adjustment to her home, school and community. (Ill. Rev. Stat. 1985, ch. 40 pars. 602(a)(3), (a)(4).) Although the child expressed a preference for living with her mother, she was unable to state the reason for her preference except that her mother had no one else, while her father did. She was not unhappy living with her father. While a mature child's preference as to custody is to be given considerable weight when it is based on sound reasoning (*In re Marriage of Leff* (1986), 148 Ill. App. 3d 792, 810, 499 N.E.2d 1042, 1054), the child involved in the instant case is not mature, nor is there anything to indicate that her preference is based on sound reasoning. Furthermore, a court is not precluded from finding that the child's preference is not in the child's best interest (*Leff*, 148 Ill. App. 3d at 810, 499 N.E.2d at 1054), especially when the child's reasons are not related to her best welfare. (*In re Marriage of Jones* (1987), 160 Ill. App. 3d 593, 597, 513 N.E.2d 1181, 1184.) We find no error in the trial court's conclusion that a modification of custody was in the best interest of the child.

■ Finally, appellant argues that there is a legislative presumption in favor of the present custodian and against modification. While this is true, it must be remembered that the purpose of this presumption is to promote the stability and continuity of the child's custodial and environmental relationships. (*In re Marriage of Wechselberger* (1983), 115 Ill. App. 3d 779, 786, 450 N.E.2d 1385, 1389.) In the instant case, that goal is better served by modification of custody.

■ A trial court's determination with respect to modification of custody will not be overturned on appeal unless it is contrary to the manifest weight of the evidence or amounts to an abuse of discretion. (*Wechselberger*, 115 Ill. App. 3d at 786, 450 N.E.2d at 1390.) We do not find such to be the case now before us.

Appellant also argues that the trial court erred in finding that appellee's obligation to pay child support terminated on November 25, 1986, when he obtained temporary custody of the child, and in determining the amount of appellee's arrearage in child support. Specifically, appellant points out that appellee did not move for a modification of custody until the date of the hearing on permanent custody, February 5, 1988, and citing section 510(a) (Ill. Rev. Stat. 1987, ch. 40, par. 510(a)), argues that appellee's obligation to pay child support continued until that date. Appellant also contends that appellee made total payments of child support only in the amount of $1,150, as opposed to the trial court's finding of $2,150. Appellant asks that judgment be entered against appellee for past-due child support in the amount of $8,750.

■ The trial court found, as a matter of equity and fairness, that appellee's obligation to pay child support terminated when the temporary custody order was entered. We agree, and also think common sense dictates that, once legal and physical custody is placed in one parent, that custodial parent has no obligation to pay child support to the noncustodial parent. Appellant points out that section 510(a) of the Illinois Marriage and Dissolution of Marriage Act provides that a judgment respecting child support may be modified only as to installments accruing subsequent to due notice by the moving party of the filing of a motion for modification. (Ill. Rev. Stat. 1987, ch. 40, par. 510(a).) However, we think that in this case, appellant was put on due notice by the filing of the petition for temporary custody that she might lose custody of the child, and thereby also the right to collect child support payments. Although this does not follow the exact language of section 510(a), we think it fulfills the purpose of that section. Child support is just that—financial support for a child. Where a custodial parent is directly providing for all of a child's financial needs,

there is no reason to require the custodial parent to pay child support to the noncustodial parent. The trial court properly determined that appellee's obligation to pay child support terminated on the date the order was entered granting him temporary custody of the child.

With respect to the amount of the arrearage, the trial court found that appellee had made child support payments totalling $2,150, representing payments of $75 in September 1984, $75 in October 1984, $1,000 in March 1985 and $1,000 in 1987. The first three payments are substantiated by the record of the circuit clerk of White County to whom the payments were made, of which the trial court took judicial notice. The final payment of $1,000 is not noted on the record of the circuit clerk, but appellee testified that he paid it, and appellant testified that she received it. Therefore, we find that the trial court's determination of the amount of child support payments made by appellee is not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of White County is affirmed.

Affirmed.

HARRISON and HOWERTON, JJ., concur.