# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*In re Marriage of Turk*, 2013 IL App (1st) 122486

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF IRIS TURK, Petitioner-Appellee, and STEVEN TURK, Respondent-Appellant (Jennifer Turk, Third-Party Respondent). |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-2486 |
| Filed | September 6, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In postjudgment proceedings in a marriage dissolution action, although the trial court had the authority to order the custodial father to pay child support to the noncustodial mother and did not abuse its discretion by entering such an order and in requiring the father to pay for all of the children's uncovered medical expenses, the order was reversed and the cause was remanded for an evidentiary hearing to determine the correct amount of support the mother was due based on her expenses as a noncustodial parent and section 505 of the Illinois Marriage and Dissolution of Marriage Act. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 04-D-6815; the Hon. David Haracz, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on Appeal

Howard M. Levine and Brian W. Reidy, both of Levine, Wittenberg, Shugan & Schatz, Ltd., of Tinley Park, for appellant.

Gail M. O'Connor, of O'Connor Family Law, PC, of Chicago, for appellee.

Panel

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.

Justices Hall and Reyes concurred in the judgment and opinion.

## OPINION

¶ 1 Following a hearing on March 6, 2012, the trial court entered an order finding that, pursuant to an agreement between respondent, Steven Turk, and petitioner, Iris Turk, Steven had sole custody of their two children. The trial court further found that Iris and Steven shared possession of their younger son, but that Iris's parenting time with their older son was temporarily unequal. Finally, the trial court found that Steven earns approximately $150,000 per year, while Iris earns less than $10,000 per year. Based on those findings, and after reviewing the parties' financial disclosure statements, the trial court ordered Steven to pay Iris $600 per month for child support and ordered that Steven was solely responsible for all of the children's uninsured medical expenses.

¶ 2 On this appeal, Steven argues: (1) that the trial court did not have the authority under Section 505 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/505 (West 2010)) to order a custodial parent to pay child support to a noncustodial parent and (2) that even if the trial court did have authority to order Steven, the custodial parent, to pay child support to Iris, the noncustodial parent, the trial court abused its discretion in ordering him to pay child support to Iris and pay for all uncovered medical expenses.

¶ 3 For the following reasons, we reverse the trial court's decision and remand the cause to the trial court.

¶ 4 BACKGROUND

¶ 5 On June 23, 2004, Iris filed a petition for dissolution of marriage from Steven based on irreconcilable differences. The petition alleged that Iris and Steven were lawfully married on October 17, 1993, and had two sons during the marriage, ages six and four at the time of the filing of the petition. On July 21, 2004, Iris filed petitions for maintenance and child support. As an exhibit to her petition for maintenance, Iris attached a disclosure statement pursuant to circuit court of Cook County Rule 13.3.1 (13.3.1 disclosure statement) (Cook Co. Cir. Ct.

R. 13.3.1 (Jan. 1, 2003)), itemizing her assets and expenses as of June 25, 2004. The statement included "children's expenses" of $2,040 per month, comprised of expenses for clothing, grooming, education, medical, allowance, child-care, babysitters, clubs or summer camps, vacation, entertainment, and other activities.

¶ 6      On July 25, 2005, the trial court entered a judgment for dissolution of marriage, incorporating the parties' marital settlement agreement and joint parenting agreement. Pursuant to the marital settlement agreement, the trial court ordered Steven to pay Iris nonreviewable unallocated maintenance and support of $4,000 per month for 42 months, ending in January 2009; after 42 months, child support would be calculated in accordance with section 505 of the Act. The trial court further ordered that Steven would be responsible for providing medical insurance for the two children; any medical expenses not covered by insurance would be split equally between Steven and Iris. In the joint parenting agreement, the parties agreed to joint care, custody, control and education of both their children and agreed that the children would primarily reside with Iris.

¶ 7      On November 3, 2008, Steven filed a petition for an emergency modification of custody, describing several occasions where Iris had verbally or physically attacked Steven's current wife, Jennifer Turk, with one incident resulting in a pending criminal charge against Iris. The petition sought: (1) temporary custody of the children; (2) a modification of the judgment for dissolution of marriage granting Steven sole custody of the children; and (3) a termination of his child support obligation, with the issue of support either being reserved or modified so that Iris paid Steven child support. The emergency petition was continued several times and a child's representative was appointed.

¶ 8      On November 26, 2008, the trial court entered a custody/visitation injunction order that enjoined any third party, namely, Jennifer, from discussing any past litigation between Steven and Iris. The order further indicated that all communication regarding parenting time and visitation time must be done between Steven and Iris, and that Iris and Jennifer should have no contact with one another at any time.

¶ 9      On December 8, 2008, Steven filed a petition to terminate maintenance and for setting of child support. In the petition, Steven claimed that the 42-month period of unallocated maintenance and child support would expire on January 25, 2009, and it was necessary to terminate the maintenance and set a child support amount.

¶ 10      On January 6, 2009, Iris filed a petition for interim and prospective attorney fees, arguing that Steven should be ordered to pay her attorney fees. Attached to the petition was an updated 13.3.1 disclosure statement, itemizing Iris's assets and expenses as of December 11, 2008. According to the disclosure statement, Iris had monthly children's expenses of $740, comprised of expenses for clothing, grooming, education, extracurricular activities, clubs or summer camps, and entertainment.

¶ 11      On September 1, 2009, Iris filed an emergency petition to immediately terminate or restrict visitation by Steven and Jennifer, claiming that Steven and Jennifer had been violating the injunction order "in such a manner as to constitute a serious endangerment of the children so as to require the immediate termination of all visitation" between Steven, Jennifer, and the children. In the alternative, Iris requested that Steven and Jennifer not be

permitted unsupervised visitation with the children. On September 29, 2009, Jennifer was added as an additional party respondent to the proceedings. On November 2, 2009, Iris filed an emergency petition to immediately terminate or restrict visitation by Jennifer, claiming that, while Steven's conduct had been resolved, Jennifer was still speaking negatively to the children about Iris.

¶ 12    On November 3, 2009, the children's representative filed a motion for a custody evaluator pursuant to section 604(b) of the Act (750 ILCS 5/604(b) (West 2008)), claiming that the issues involved in the case were sufficiently serious, complicated, and undetermined such that it was appropriate for the trial court to seek the advice of a professional in order to assist the court in properly determining what would be in the children's best interest. On February 18, 2010, the trial court granted the children's representative's motion, and Dr. Mary Gardner was appointed as a section 604(b) custody evaluator. On March 4, 2010, the trial court ordered Steven to pay 75% and Iris to pay 25% of Dr. Gardner's retainer.

¶ 13    On May 26, 2010, Iris filed a petition for modification of the judgment for dissolution of marriage, seeking sole custody of the children.

¶ 14    On October 22, 2010,[1] the trial court granted Steven's emergency petition for temporary custody of the children, ordering both children to be in the physical custody of Steven until the parties came before the court again on November 1, 2010. After a hearing on November 1, 2010, the trial court awarded Steven temporary physical custody of both children, ordered that Iris have supervised visitation and reduced the amount of child support Steven owed Iris from $2,388 per month to $1,600 per month. On November 10, 2010, the court modified Iris's visitation: Iris was permitted to resume unsupervised visits with her younger child and would have dinner visits with her older child every week at a public place.

¶ 15    On January 10, 2011, Steven filed a petition for termination of child support, claiming that his custody of the children constituted a material and substantial change in circumstances necessitating a termination of child support. In her response to the petition, Iris argued that the order only granted Steven temporary custody of the children and did not modify parenting time with the children. Iris also argued that Steven should pay her child support for their younger child, since they shared essentially equal parenting time; Iris acknowledged that, temporarily and not pursuant to court order, Steven had almost exclusive parenting time with their older child. Additionally, Iris's petition included an "affirmative request for modification," requesting that Steven be held responsible for all out-of-pocket health care expenses, rather than having the expenses split equally. Iris argued that since the entry of the judgment for dissolution, a substantial change of circumstances had occurred, since Steven's child support obligation had decreased and he was attempting to terminate it entirely.

¶ 16    On June 3, 2011, the trial court entered an agreed order on Steven's petition for termination of child support and Iris's affirmative request, granting Steven's petition in part and denying it in part. The trial court reduced the amount of child support Steven owed Iris from $1,600 per month to $700 per month, "which constitutes a deviation from guidelines,

[1]The order contained in the record on appeal is not dated. However, Steve's brief states that the order was entered on October 28, 2010, and Iris does not dispute the date.

-4-

based upon the current parenting schedule." On June 7, 2011, Steven filed a petition to set child support, requesting that the court order Iris to pay him child support and contribute to his attorney fees. On June 17, 2011, Iris filed a motion to vacate the agreed order of June 3, 2011; the motion is not contained in the record on appeal.

¶ 17　　The parties came before the trial court on March 6, 2012, for a hearing on the issue of child support. Iris argued that the trial court had discretion under section 505 of the Act to award her child support, regardless of the fact that Steven had custody of the children. She pointed to the fact that she split parenting time of the younger child equally with Steven and that nothing had changed with regard to the younger child since the entry of the judgment for dissolution; she acknowledged that the older child was "extraordinarily alienated" from her, but hoped that he would eventually return to a normal visitation schedule. Iris argued that she had no history of earnings and no capacity to support herself, relying on her family to pay for child-rearing expenses.

¶ 18　　Steven argued that he was the sole custodial parent and that the children spent 75% of the total parenting time with him. Steven further argued that there was no basis in the law to award a noncustodial parent child support and that any support he paid Iris would be maintenance, which was waived in this case. Finally, Steven contended that Iris was well supported by her family and had a family trust from which Iris should actually pay him child support.

¶ 19　　After hearing the arguments of the parties, the trial court stated:

"I think the facts in this case are unique. We have a post-decree shift in custody from the former wife to the former husband.

The alienating of the minor child, of the oldest minor child, I'm not pointing fingers at anybody here regarding this alienation, but it is clear that that oldest minor child has little current relationship with his mother, that hopefully will be rebuilt in some form or fashion soon.

However, the former Ms. Turk does have significant time spent with the youngest child, more than what is seen in standard visitation, maybe not 50 percent time with him, but close to it.

I think everyone in this room hopes that the older minor child will be brought back into the relationship with his mother and spend more time with his mother."

The court further noted that "[t]here is clearly a large disparity between the parties in their incomes and their standards of living because of that" and that, if Iris had custody of the children, guideline support would be "somewhere in the neighborhood of 2500." However, the court pointed out that Iris did not have custody, nor did she have split custody. Nevertheless, the court concluded: "based on the unique set of factors here, and she does have significant time with the younger child, I am going to award an amount of child support, in the specific amount of $600 per month." The court also ordered Steven to pay 100% of the uncovered medical expenses.

¶ 20　　Steven's counsel indicated that the issue would be appealed and stated: "I think you are dead wrong, Judge. I respect you a great deal, but I don't think you can do it." The trial court responded:

"Counsel, I got that. I know that's where it's going up. I think, as I said, there are unique factors here.

I think it would be certainly in the best interest of at least [the] youngest minor child that there be support going from the custodial parent to the non-custodial parent. I think these parties need to get out of the court system, but I also understand one side thinks very strongly that I've just made a mistake."

¶ 21    On July 26, 2012, the trial court entered an agreed custody judgment and parenting order, giving Steven sole custody of the two children. The order contained a parenting schedule, which recognized that the principal residence of the children was with Steven, but that Iris would have regular and reasonable visitation with the children. For the younger child, Iris had visitation every Monday after school through Wednesday morning and, on alternating weekends, from Friday after school until Wednesday morning. For the older child, the parties acknowledged that Iris's parenting time was different than with the younger child and that "presently," Iris would have parenting time with the older child one time per week, on Wednesdays for dinner.

¶ 22    Also on July 26, 2012, the trial court entered a written order on Steven's petition to terminate child support and Iris's answer and affirmative defense thereto. The written order noted that the trial court made its findings "having heard arguments on the issue of child support for IRIS and having examined all of the economic affidavits of the parties and taking the case on representation, i.e., reviewing the 13.3 Affidavits of both parties as well as hearing arguments of counsel and reviewing case law."[2] The court found that Steven had sole custody of both children pursuant to the custody judgment and parenting order entered the same day; that Iris and Steven shared parenting time of the younger child equally but that temporarily, Iris's parenting time with the older child was not equal; and that Steven earned approximately $150,000 per year while Iris was minimally employed and earned less than $10,000 per year. Based on those findings, the court ordered Steven to pay Iris $600 per month for child support and ordered Steven solely responsible for all uncovered medical, dental, orthodontic, psychological, and optical expenses for the children. This appeal follows.

¶ 23                                    ANALYSIS

¶ 24    On this appeal, Steven argues: (1) that the trial court did not have the authority under Section 505 of the Act to order a custodial parent to pay child support to a noncustodial parent and (2) that, even if the trial court did have authority to order Steven, the custodial parent, to pay child support to Iris, the noncustodial parent, the trial court abused its discretion in ordering him to pay child support to Iris and pay for all uncovered medical expenses.

---

[2]The record on appeal does not contain Steven's 13.3.1 disclosure statement, and the most recent statement of Iris's contained in the record on appeal is dated December 11, 2008. However, the record indicates that, on February 18, 2010, the court ordered the parties to submit their disclosure statements within seven days.

¶ 25                                    I. Standard of Review

¶ 26        Our review of Steven's first contention on appeal is *de novo*. Steven's argument that the trial court lacked authority under the Act to order a custodial parent to pay child support to a noncustodial parent is a question of law which we review *de novo*. *People v. Kelly*, 397 Ill. App. 3d 232, 255 (2009). Steven's argument also requires us to interpret section 505 of the Act, and questions of statutory interpretation are reviewed *de novo*. *People ex rel. Devine v. Sharkey*, 221 Ill. 2d 613, 617 (2006); see also *Burnette v. Terrell*, 232 Ill. 2d 522, 532-33 (2009) ("a dispute between two public officials over the scope of the authority granted to each by constitution and statute" was reviewed *de novo*). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 27        Our standard of review for Steven's second contention on appeal is an abuse of discretion standard. When a defendant challenges the trial court's deviation from the amount of child support required by statute, the standard of review is whether the trial court abused its discretion in deviating from the statute, and a reviewing court will not disturb the trial court's decision absent an abuse of discretion. *In re Marriage of Rogers*, 213 Ill. 2d 129, 135 (2004). An abuse of discretion occurs "only where no reasonable person would take the view adopted by the trial court." *In re Marriage of Smith*, 2012 IL App (2d) 110522, ¶ 46 (citing *In re Marriage of Sturm*, 2012 IL App (4th) 110557, ¶ 3).


¶ 28        II. Authority of Trial Court to Award Child Support to Noncustodial Parent

¶ 29        Steven first argues that the trial court did not have the authority under section 505 of the Act to order him, the custodial parent, to pay child support to Iris, the noncustodial parent. We first examine the language of the Act to determine whether it grants the trial court authority to order a custodial parent to pay child support to a noncustodial parent. Next, we look to Illinois cases interpreting the authority conferred by the Act to award child support. Due to the scarcity of Illinois case law on this point, we look to cases from other jurisdictions for persuasive authority as to whether noncustodial parents may be awarded child support. Finally, we consider the importance of the best interests of the children in concluding that trial courts possess the authority to order a custodial parent to pay child support to a noncustodial parent under Section 505 of the Act.

¶ 30        As an initial matter, Iris claims that we should not consider Steven's argument about the court's authority to award Iris child support because Steven raises the issue for the first time on appeal. "Issues raised for the first time on appeal are waived." *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 306 (2000) (citing *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 161 (1999)). However, in the case at bar, we agree with Steven that he sufficiently raised the issue before the trial court. During the March 6, 2012, hearing, in which the trial court ordered Steven to pay $600 per month for child support, Steven's attorney questioned the trial court's authority several times. For instance, Steven's attorney argued that "[t]here is no basis in law for you to award support" and that "to ask my client for support, in a circumstance in this situation, would be wrong, against all of the law

-7-

in this state at this time, and equitably unfair." Steven's attorney further argued that "[t]his is not a case where [Steve] should pay a dime of child support to [Iris], and there is no theory of law which would support it. *** [Y]ou certainly can't *** enter an order when he's got custody of both children for him to pay support to *** [Iris]. It is just not legally correct." After the trial court ordered Steven to pay $600 per month to Iris for child support, Steven's attorney stated: "I think you are dead wrong, Judge. I respect you a great deal, but I don't think you can do it." We believe this conduct preserved the issue for appeal. Moreover, the waiver doctrine is a limitation on the parties, not on the reviewing court. *Niles Township High School District 219 v. Illinois Educational Labor Relations Board*, 369 Ill. App. 3d 128, 137 (2006); *Luss v. Village of Forest Park*, 377 Ill. App. 3d 318, 330 (2007). Here, we find that the claim was properly preserved, we choose to find no forfeiture, and we proceed to consider Steven's claim on its merits.

¶ 31     We first examine the language of section 505 of the Act to determine whether a trial court has the authority to order a custodial parent to pay child support to a noncustodial parent. When interpreting statutes, the reviewing court's goal is to "ascertain and give effect to the true intent of the legislature." *In re Marriage of Kates*, 198 Ill. 2d 156, 163 (2001). " 'The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning.' " *Kates*, 198 Ill. 2d at 163 (quoting *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997)). When the plain language is unambiguous, the legislative intent discernible from the language must prevail and to resort to other interpretive aids is unnecessary. *Kates*, 198 Ill. 2d at 163. "Statutes should be read as a whole with all relevant parts considered, and they should be construed, if possible, so that no term is rendered superfluous or meaningless." *Kates*, 198 Ill. 2d at 163 (citing *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990), and *Advincula v. United Blood Services*, 176 Ill. 2d 1, 16-17, 26 (1996)).

¶ 32     In relevant part, section 505 of the Act states that, "[i]n a proceeding for dissolution of marriage, *** the court may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable and necessary for his support." 750 ILCS 5/505(a) (West 2010). Both parties agree that the statute should be read as a whole when construing the proper interpretation, though differ as to the correct interpretation. *Kates*, 198 Ill. 2d at 163. Steven argues that section 505 of the Act uses the words "noncustodial parent" in several subsections when referring to the party required to pay child support, thus indicating that a noncustodial parent cannot receive child support from a custodial parent. See 750 ILCS 5/505(a)(6), (b), (d), (f) (West 2010). Further, Steven argues that the "either or both" language of the Act was included to address situations of split custody, where each parent has custody of at least one child. However, Iris points instead to other subsections of the Act where the party required to pay child support is referred to by a variety of labels, such as "parent," "supporting party," "payor," "person obligated to pay support," and "obligor." See 750 ILCS 5/505(a), (a)(4.5), (a)(5), (d), (e), (f), (h) (West 2010). She also asserts that the "either or both" language is not confined solely to situations involving split custody. Thus, Iris argues that the variety of terms used, along with the language of section 505(a) that states that "either or both parents" may be ordered to pay child support, supports the conclusion that a custodial parent may be ordered to pay child support to a noncustodial parent. Since the language of the Act is not entirely clear, we look to cases interpreting the Act for further

guidance.

¶ 33    Few Illinois courts have addressed this issue. Steven cites the Fifth District case of *Shoff v. Shoff*, 179 Ill. App. 3d 178 (1989), for the proposition that a custodial parent cannot be ordered to pay child support to a noncustodial parent. In *Shoff*, the mother was granted custody of the parties' minor child at the time of the parties' divorce and moved with the child to Florida. *Shoff*, 179 Ill. App. 3d at 180. Three years later, the child returned to live with the father in Illinois, and the father was granted temporary custody. *Shoff*, 179 Ill. App. 3d at 180. The mother continued living in Florida and rarely visited the child. *Shoff*, 179 Ill. App. 3d at 182-83. The trial court then granted permanent custody to the father and determined that the father's obligation to pay child support terminated when the temporary custody order was entered, a decision that the appellate court affirmed. *Shoff*, 179 Ill. App. 3d at 187.

¶ 34    We do not find Steven's citation of *Shoff* persuasive. We note that the court in *Shoff* cited no authority for its holding, instead stating that "common sense dictates that, once legal and physical custody is placed in one parent, that custodial parent has no obligation to pay child support to the noncustodial parent." *Shoff*, 179 Ill. App. 3d at 186. Further, no court has subsequently cited the case for this proposition, except as to limit its application. See *In re Marriage of Cesaretti*, 203 Ill. App. 3d 347, 356 (1990) (finding that *Shoff*'s prohibition on ordering a custodial parent to pay child support to a noncustodial parent does not apply where both parents spend equal time with the child). Justifying its position, the *Shoff* court noted that, as a matter of equity, "[w]here a custodial parent is directly providing for all of a child's financial needs, there is no reason to require the custodial parent to pay child support to the noncustodial parent." *Shoff*, 179 Ill. App. 3d at 186-87. Thus, *Shoff* addressed a situation where the custodial parent provided for all of the child's financial needs and the noncustodial parent had minimal contact with the child. As such, *Shoff* is not applicable to the question presented before this court, which concerns a situation where the noncustodial parent has a great deal of parenting time with the children.

¶ 35    In *Cesaretti*–a case more analogous to the case at bar–the Second District held that a custodial parent may be ordered to pay child support to the noncustodial parent when parenting time is equally divided between the parents and there is a disparity in the financial condition of the parties. *Cesaretti*, 203 Ill. App. 3d at 356-57. In that case, the mother initially had custody of the parties' child, and the father was paying $75 per week in child support. *Cesaretti*, 203 Ill. App. 3d at 350. After trial on the parties' counterpetitions for dissolution of marriage, the trial court awarded the father temporary custody of the child. *Cesaretti*, 203 Ill. App. 3d at 351. The court stated that, while the father had temporary custody, the child was to spend approximately equal time with each parent; the trial court then set forth a parenting schedule for the parties.[3] *Cesaretti*, 203 Ill. App. 3d at 351. The

_____

[3]The facts of *Cesaretti* do not indicate whether the parenting schedule included discussion of parenting expenses, but the Second District's holding contemplates that each parent was responsible for parenting expenses during his or her visitation time. See *Cesaretti*, 203 Ill. App. 3d at 356 ("Because of the equal amount of time spent with the child, and hence

court also ordered the father to continue paying $75 per week to the mother for the support of the child. *Cesaretti*, 203 Ill. App. 3d at 351.

¶ 36 On appeal, the father argued that the trial court erred in ordering him to continue paying child support when he was awarded custody of the child, relying on the holding in *Shoff*. The Second District distinguished *Shoff*, noting that, in *Shoff*, the father provided for all of the child's financial needs and, as a matter of equity and fairness, the father's obligation to pay child support to the mother terminated when the temporary custody order was granted. *Cesaretti*, 203 Ill. App. 3d at 356. However, the *Cesaretti* court found *Shoff* inapplicable, noting that "[h]ere, the trial court awarded [the father] temporary custody of [the child], but specifically stated that she shall spend approximately equal time with each parent as indicated by a schedule set forth in the decision. Because of the equal amount of time spent with the child, and hence the relative financial contribution, we do not find the trial court's award of support to be manifestly erroneous." *Cesaretti*, 203 Ill. App. 3d at 356.

¶ 37 The *Cesaretti* court also pointed to the disparity in the financial conditions of the parents, noting that it was established at trial that the father had a yearly gross salary of over $20,000 working at two jobs, had approximately $1,000 in monthly expenses, and had approximately $1,500 in assets. *Cesaretti*, 203 Ill. App. 3d at 357. By contrast, the mother earned approximately $7,000 per year working as a waitress, had monthly expenses of over $2,000, and was in debt over $20,000. *Cesaretti*, 203 Ill. App. 3d at 357. The court noted that "[w]hile the financial responsibility for the support of a child is the joint obligation of the parents, it is only equitable that the parent with the disproportionately greater income should bear a greater share of the costs of support." *Cesaretti*, 203 Ill. App. 3d at 356-57. Given the financial disparity, the court concluded that "we cannot say that the trial court's award of $75 per week for child support was erroneous." *Cesaretti*, 203 Ill. App. 3d at 357.

¶ 38 Steven argues that *Cesaretti* is inapplicable to the situation in the case at bar because the father in that case had been awarded temporary custody of the minor child concerned, rather than permanent custody as Steven has been awarded in this case. However, Steven does not explain why this is a meaningful distinction, and we find *Cesaretti* instructive in its conclusion that a trial court may award child support to the noncustodial parent when parenting time is equally divided between the parents.

¶ 39 We next look to other jurisdiction that have addressed this issue. Given the scarcity of Illinois case law on this point, an examination of other states' law is helpful, though not determinative. See *Skipper Marine Electronics, Inc. v. United Parcel Service, Inc.*, 210 Ill. App. 3d 231, 239 (1991) (noting that decisions of courts of foreign jurisdictions are not binding on Illinois courts, but such decisions, where relevant, "should be examined for such value as Illinois courts may find in them when out-of-State courts have construed certain language and the Illinois courts have not"). A nonexhaustive review of decisions from other jurisdictions reveals a range of approaches. Some states have held that a custodial parent is not required to pay child support to the noncustodial parent during periods of visitation with

the relative financial contribution, we do not find the trial court's award of support to be manifestly erroneous.").

the noncustodial parent. See *Bondi v. Bondi*, 586 N.W.2d 145, 147 (Neb. 1998); *Avin v. Avin*, 252 S.E.2d 888 (S.C. 1979); *Daigrepont v. Daigrepont*, 458 So. 2d 637 (La. Ct. App. 1984). Going further, Tennessee has held that a custodial parent can never be ordered to pay child support to a noncustodial parent. See *Gray v. Gray*, 78 S.W.3d 881, 884 (Tenn. 2002).

¶ 40    However, in a case with facts similar to the case at bar, the Pennsylvania Superior Court held:

"[W]here parents of minor children share custody to the extent that the non-custodial parent has the children for nearly fifty (50%) percent of the hours of each month and has, in addition, the entire responsibility for transporting the children to and from her home, their father's home, their schools and other activities; and where the 'primary' custodial parent's earnings or earning potential varies significantly from the other parent, child support may be ordered to be paid to the 'non-custodial' parent. We would anticipate that such shared child support would be limited to cases such as this where the 'visitation' amounts to de facto shared custody and where the non-primary custodial parent is able to demonstrate regular, necessary and reasonable expenses incurred attendant to the visitation/custody." *Little v. Little*, 657 A.2d 12, 16-17 (Pa. Super. Ct. 1995).

The Pennsylvania Supreme Court subsequently reiterated this principle, holding that a parent with primary custody may be ordered to pay child support to a parent with partial custody when the parties have a significant disparity in income and that a trial court should consider "whether the non-custodial parent has sufficient assets to provide the children with appropriate housing and amenities during his or her period of partial custody." *Colonna v. Colonna*, 855 A.2d 648, 651-52 (Pa. 2004). Thus, it is evident that states follow a range of approaches in deciding whether courts may order a custodial parent to pay child support to a noncustodial parent.

¶ 41    Finally, we consider the importance of the best interests of the children in child support cases. It is the obligation of the court to protect the best interests of the children involved in determining child support obligations. *Blisset v. Blisset*, 123 Ill. 2d 161, 167 (1988). Section 505 allows courts to depart from the statutory child support guidelines in stating that "[t]he above guidelines shall be applied in each case unless the court makes a finding that application of the guidelines would be inappropriate, after considering the best interests of the child in light of evidence." 750 ILCS 5/505(a)(2) (West 2010). Additionally, child support decisions are "within the sound discretion of the trial court." *In re Marriage of Reyna*, 78 Ill. App. 3d 1010, 1014 (1979).

¶ 42    Given this analysis, we find that the trial court had the authority to order Steven, as the custodial parent, to pay child support to Iris, as the noncustodial parent. The language of section 505 of the Act does not provide clear guidance on this question; however, we find that the portion stating that "the court may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable and necessary for his support" to be instructive. 750 ILCS 5/505(a) (West 2010). Additionally, at least one Illinois court interpreting the Act has held that a trial court may award child support to the noncustodial parent when both parents have significant parenting time and incur expenses related to that

parenting time, and there is disparity in income between the two parents. *Cesaretti*, 203 Ill. App. 3d at 356. Our review of decisions from other states indicates that courts elsewhere have held that a custodial parent may be ordered to pay child support to a noncustodial parent. *Little*, 657 A.2d at 16-17; *Colonna*, 855 A.2d at 651-52. Finally, we note that courts are charged with protecting the best interests of the children in child support matters and that, in some cases, the best interests of the children may require the custodial parent to pay support to the noncustodial parent where the parents have comparable parenting time and there exists a significant disparity in income between the parents. Accordingly, we find that the trial court had authority to order Steven to pay child support to Iris.

¶ 43                                    III. Abuse of Discretion

¶ 44        Steven next contends that the trial court abused its discretion in ordering him to pay child support to Iris, as well as in ordering him to pay for all medical expenses not covered by insurance. As noted, "[t]he setting or modification of child support is within the trial court's discretion and will not be reversed absent an abuse of that discretion." *In re Marriage of Sweet*, 316 Ill. App. 3d 101, 105 (2000). Steven argues that the trial court did not determine the minimum amount of support by using the guidelines laid out in section 505. 750 ILCS 5/505(a)(2) (West 2010). Specifically, he contends that the trial court failed to consider Iris's interest in a family trust and that the court failed to consider the factors under section 505(a)(2) in deviating from the guidelines. Iris, on the other hand, asserts that the court reached its decision after reviewing both parties' financial affidavits and points out that Steven has not contested the veracity of the affidavits.

¶ 45        "Section 505(a)(2) of the Act [citation] requires the trial court to determine a minimum amount of child support based on statutory guidelines unless it finds, after considering evidence on relevant factors, that using the guidelines would be inappropriate." (Emphases omitted.) *In re Marriage of Stanley*, 279 Ill. App. 3d 1083, 1085 (1996). The relevant factors under section 505(a)(2) include: "(a) the financial resources and needs of the child; (b) the financial resources and needs of the custodial parent; (c) the standard of living the child would have enjoyed had the marriage not been dissolved; (d) the physical and emotional condition of the child, and his educational needs; and (e) the financial resources and needs of the non-custodial parent." 750 ILCS 5/505(a)(2) (West 2010). A determination of child support under the Act begins with the presumption that the guidelines will be applied and compelling reasons must exist to overcome that presumption. *Stanley*, 279 Ill. App. 3d at 1085. Further, the trial court must make express findings if it deviates from the guidelines; however, these findings need not be written or incorporated into the court's order, but can be in the form of oral comments. *Sweet*, 316 Ill. App. 3d at 108.

¶ 46        In the case at bar, the transcript of the hearing held on March 6, 2012, indicates that the trial court judge estimated that the statutory guidelines would have required Steven to pay "somewhere in the neighborhood of 2500" if Iris had custody of both children.[4] The

_____

[4]There is no evidence in the record of this case concerning any income Iris receives from a family trust and, as a result, there is nothing to review in that regard.

transcript does not reflect that the court considered Iris paying child support to Steven, although Steven did argue that Iris should pay him child support. However, the court also noted several factors that make this case unique: the postjudgment shift in custody, the alienation of the oldest child, the significant time Iris spends with the youngest child, and the disparity in the incomes of Steven and Iris. Finally, the trial court specifically stated that it would be in the best interest of the younger child that there be support from the custodial parent to the noncustodial parent. The Illinois Supreme Court has held that, though the better practice is for the trial judge to state the amount of support calculated under the guidelines and explain reasons for deviation from that figure, failure to state the statutory amount of child support may not constitute reversible error in light of other factors. *In re Marriage of Minear*, 181 Ill. 2d 552, 566 (1998).

¶ 47    Steven points out that Iris spends little time with the older child. However, Steven does not address the significant amount of time that Iris spends with the younger child or the fact that the trial court noted the alienation of the older child both during the hearing and in its written order. "The necessity for child support, as well as the amount of the award, are decisions within the sound discretion of the trial court ***" (*Cesaretti*, 203 Ill. App. 3d at 356 (citing *Reyna*, 78 Ill. App. 3d at 1014)) and "[t]he setting or modification of child support *** will not be reversed absent an abuse of that discretion" (*Sweet*, 316 Ill. App. 3d at 105). Finally, the best interest of the child is paramount in child support cases, and the trial court explicitly found that ordering Steven to pay child support to Iris was in the best interest of the younger child. *Blisset*, 123 Ill. 2d at 167.

¶ 48    In the case at bar, we cannot say that the trial court abused its discretion in ordering Steven to pay Iris child support. However, we must nevertheless reverse the trial court's decision and remand the case to the trial court because the amount of child support awarded to Iris is not supported by the record on appeal. The trial court did not discuss the parties' parenting expenses during the hearing but, in its written order, the trial court indicated that it had considered the 13.3.1 disclosure statements of the parties, which disclosed the parties' assets and expenses, including expenses related to the children. In the most recent disclosure statement contained in the record on appeal, Iris listed $740 as children's expenses. However, that disclosure statement was compiled at a time when Iris had custody of the children. There is nothing in the record itemizing Iris's parenting expenses after custody was shifted to Steven, and reliance on an earlier disclosure statement would not account for expenses that Steven, as the custodial parent, now pays instead of Iris. As a result, we are remanding this case back to the trial court to conduct an evidentiary hearing to determine what monies Iris pays when she has visitation with the children. That figure is the amount that the trial court should consider in determining child support. The trial court should also take the opportunity to clearly explain the basis for any support awarded, as required by section 505 of the Act.

¶ 49    Finally, Steven contends that the trial court abused its discretion in ordering him to pay all medical expenses of the children not covered by insurance. He argues that Iris did not properly file a motion for modification of medical expenses, but instead placed an affirmative request for modification in her response to Steven's petition for termination of child support. While it is true that a motion for modification of child support is typically

required for a court to modify a child support order, we also note that Steven had filed a petition to terminate support, therefore bringing the matter before the court. See *In re Marriage of Florence*, 260 Ill. App. 3d 116, 122-23 (1994) (holding that respondent was placed on notice that modified child support was sought, even though trial court ordered relief that was not sought in the pleadings). *Cf. In re Marriage of Zukausky*, 244 Ill. App. 3d 614, 619 (1993) (holding that respondents in child support modification actions must file a cross-petition if the relief they seek is different from the relief sought by the petitioner). Further, it is the court's obligation to protect the best interests of the children in child support matters. *Blisset*, 123 Ill. 2d at 167. We find that the trial court's consideration of the request for modification of medical expenses best served the interests of the children in this case.

¶ 50    Steven further argues that Iris's argument as to uncovered medical expenses is contradictory. He asserts that she argued that there was not a substantial change in circumstances to justify a modification of child support, but that there was a substantial change in circumstances as to out-of-pocket medical expenses. Iris responds that Steven mischaracterizes her argument and that, though there was not a substantial change in circumstances so as to merit a reduction in Steven's child support obligation, there was a substantial change as to medical expenses in that the amount of child support due Iris had been previously reduced from $2,388 to $1,600 by the trial court. We note that "[t]rial courts have wide latitude in determining whether a substantial change has occurred." *In re Marriage of Johnson*, 209 Ill. App. 3d 1025, 1029 (1991). Additionally, the hearing transcript indicates that the trial judge based his decision on "the unique set of factors" present in this case: the postjudgment shift in custody, the alienation of the oldest child, the significant time Iris spends with the youngest child, and the disparity in the incomes of both parties. Accordingly, we do not think the trial court's decision to order Steven to pay all uncovered medical expenses is one in which "no reasonable person would take the view adopted by the trial court" (*Smith*, 2012 IL App (2d) 110522, ¶ 46) and affirm the trial court's decision in that regard.

¶ 51                                                    CONCLUSION

¶ 52    We find that the trial court had the authority to order Steven to pay child support to Iris. However, we reverse the trial court's award of support and remand the case to the trial court to conduct an evidentiary hearing as to the amount of support to which Iris is entitled, taking into consideration Iris's parenting expenses as a noncustodial parent and the requirements of section 505 of the Act. Finally, we find that the trial court did not abuse its discretion in ordering Steven to pay all uncovered medical expenses.

¶ 53    Reversed and remanded.