S13A0953. WILLIAMSON v. WILLIAMSON.
(748 SE2d 679)

NAHMIAS, Justice.

Appellant Charles Williamson (Father) and appellee Susan Williamson (Mother) were divorced in March 2009. The final divorce decree granted the parties joint custody of their two children. The permanent parenting plan, which was incorporated into the decree, granted Mother 61 percent of the parenting time and Father 39 percent of the parenting time annually. Father was required to pay Mother $1,450 each month for child support.

On March 9, 2011, Father filed a petition to modify child custody, visitation, and child support. After a bench trial, the court issued a final order on the petition on October 15, 2012. The trial court ruled that the parents will continue to have joint legal and physical custody of the children but essentially flipped the division of parenting time

to give Father 60 percent of the "custodial parenting time" and Mother 40 percent. Based on a monthly gross income of $7,570.63 for Father and $1,300 for Mother and the application of the statutory child support guidelines, see generally OCGA § 19-6-15, the court found that the presumptive amount of child support paid by Father would be $1,359 and by Mother would be $233. The court then said that the "guidelines would be unjust and inappropriate considering the relative ability of each parent to provide support because of the disparate incomes of the parties," and that the best interest of the children would be served by a deviation from the presumptive amount to "allow Mother resources to maintain adequate housing and necessities while the children are in her care." The court found that "a deviation for the increased parenting time of the Father in the amount of $272.00 is warranted" and ordered Father to pay Mother $1,087 ($1,359 minus $272) as monthly child support.

On November 14, 2012, Father filed a motion for reconsideration of the final order, which was denied on December 4, 2012.[1] Father filed a timely application to appeal in the Court of Appeals, which properly transferred the application to this Court because this is a "divorce and alimony" case within our jurisdiction. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. III (6). We then granted the application under OCGA § 5-6-35 (j) because the order appealed decided child custody and Father was therefore entitled to a direct appeal under OCGA § 5-6-34 (a) (11). See *Edge v. Edge*, 290 Ga. 551, 552 (722 SE2d 749) (2012).

On appeal, Father does not contest much of the final order, and the unchallenged portions are hereby affirmed. Father contends, however, that the final order makes him the "custodial parent" and Mother the "noncustodial parent" and that the trial court therefore erred in requiring him to pay child support to Mother, because a custodial parent cannot be ordered to pay child support to a noncustodial parent. Father also argues that the court misapplied the child support guidelines by awarding him a parenting time deviation, because such a deviation can be given only to a noncustodial parent. In response, Mother disputes the premise that Father is the custodial parent. She is wrong about that, and Father is wrong about his claim that a custodial parent can never be ordered to pay child support to a noncustodial parent. However, Father's argument that the trial

---

[1] On October 22, Father had filed a motion to recuse the trial judge, a motion to vacate the final order, and a motion for new trial. After denying the motion to recuse on October 29, the original judge voluntarily recused himself on November 1, and Father then withdrew his motions to vacate the final order and for a new trial. A new trial judge was then assigned to the case.

court erred in calculating the child support obligation is well-founded, and we therefore must reverse the child support portion of the final order and remand for child support to be determined correctly.

1. The trial court did not explicitly designate Father or Mother as the "custodial parent" in the final order, but the court was not required to do so. Because the order awarded Father more than 50 percent of custodial parenting time with the children, he is now the "custodial parent" and Mother is the "noncustodial parent" for purposes of applying the child support guidelines.

The guidelines statute defines the term "custodial parent" in OCGA § 19-6-15 (a) (9). See also OCGA § 19-6-15 (a) (14) (defining "noncustodial parent"). The definition looks first and foremost to the amount of time the children spend with each parent. Its first sentence says, " 'Custodial parent' means the parent with whom the child resides more than 50 percent of the time." Thus, if the children spend more than 50 percent of their time with one parent, that parent is the "custodial parent"; the court need not explicitly state that designation and indeed is given no discretion to make a different designation. Under the final order in this case, the parties' children will spend 60 percent of their time with Father, so he is the "custodial parent."

The second sentence of the "custodial parent" definition says, "Where a custodial parent has not been designated or where a child resides with both parents an equal amount of time, the court shall designate the custodial parent as the parent with the lesser support obligation." Mother argues that this requires the court to designate a custodial parent and, because the court did not do so and she has the lesser support obligation, she must be the custodial parent.[2] However, the second sentence of OCGA § 19-6-15 (a) (9) applies only if the custodial parent has not already been determined under the first sentence. In other words, the custodial parent is determined by *money* (which parent has the lesser child support obligation) only where neither parent has the children "more than 50 percent of the *time*" — where the parenting time is divided 50-50 or where the children reside for some portion of time with a third party, so that neither parent has a majority of the custody time.[3]

---

[2] Mother also argues that Father is not the custodial parent because she and Father have "joint physical custody" of the children. But the definitions of custodial parent and noncustodial parent do not turn on whether the parents have joint physical (or legal) custody of their children. Indeed, the guidance provided by the definitions is most important when parents share physical custody, since a parent who has sole custody is obviously the custodial parent.

[3] The guidelines give the court discretion to determine which parent will be designated as "custodial" and which as "noncustodial" only in cases where the first two sentences of the

Accordingly, the trial court did not err in failing to explicitly identify Father as the "custodial parent"; the court's order awarding him 60 percent custodial parenting time made him the custodial parent, and Mother the noncustodial parent, by operation of the statutory definitions.

2. Father contends that the trial court erred in requiring him to pay Mother $1,087 in monthly child support because a custodial parent may not be ordered to pay support to a noncustodial parent. However, this Court held long ago that "a trial court, in the exercise of its discretion, may properly order a custodial parent to pay for the support of minor children while visiting with the non-custodial parent," where "the best interest of the child requires that money be provided the non-custodial parent to provide for a proper visitation." *James v. James*, 246 Ga. 233, 233 (271 SE2d 151) (1980). Father acknowledges *James* but argues that its holding is no longer valid because that case was decided before the enactment of the current child support guidelines.

It is true that the child support statutes have been substantially amended since *James* was decided, and the discretion of trial courts to calculate child support is now significantly more constrained. But the touchstone for determining child support remains the "best interest" of the children. See, e.g., OCGA § 19-6-15 (i) (1) (A) ("In deviating from the presumptive amount of child support, primary consideration shall be given to the best interest of the child for whom support under this Code section is being determined."). And as this Court recently explained — by quoting *James* — in the current guidelines just as in the old statutes, " '[t]he legislature [has] not specif[ied] that only non-custodial parents are to pay child support.' " *Rowden v. Rowden*, 290 Ga. 65, 67 (717 SE2d 469) (2011) (quoting *James*, 246 Ga. at 233).

Father asserts that the very idea of a custodial parent paying support to a noncustodial parent defies logic. But child support is meant in part "to achieve the state policy of affording to children of unmarried parents, to the extent possible, the same economic standard of living enjoyed by children living in intact families consisting of parents with similar financial means." OCGA § 19-6-15 (c) (1). In this case, as in others, the "noncustodial" parent remains responsible under the final order for supporting the children a substantial portion — here, 40 percent — of the time. Thus, while the financial burden of

---

definition do not apply — "[w]here the child resides equally with both parents *and* neither parent can be determined as owing a greater amount than the other." OCGA § 19-6-15 (a) (9) (third sentence) (emphasis added). Accord OCGA § 19-6-15 (a) (14) (second sentence of "noncustodial parent" definition).

caring for the parties' children may not be as great for Mother as for Father, it is still significant, and her income is significantly lower than Father's. Under such circumstances, the trial court retains some discretion to determine that the statutory objective of providing the children of divorced parents the same economic standard of living that they would enjoy if they were living in an intact family may be best served by requiring the custodial parent to pay child support to the noncustodial parent.

3. Although the child support guidelines do not prohibit a trial court from ordering the custodial parent to pay child support, the statute does require the court to follow certain steps in determining the child support obligation, and the trial court here misapplied the statute in a fundamental way.

The process of calculating child support under the guidelines (and the associated child support worksheet) is structured around the initial presumption that the noncustodial parent will pay some amount to the custodial parent, who typically bears the everyday expenses of caring for the children as they live with him or her. Thus, OCGA § 19-6-15 (b) (1)-(7) sets forth a series of calculations that lead to the determination of "the presumptive amount of child support for the custodial and noncustodial parent *resulting in a sum certain single payment due to the custodial parent*," OCGA § 19-6-15 (b) (7) (emphasis added).

After determining this presumptive amount that the noncustodial parent pays and the custodial parent receives, the court may order deviations pursuant to OCGA § 19-6-15 (i), adding to or subtracting from the presumptive payment to arrive at the final child support obligation. See OCGA § 19-6-15 (b) (9) ("The final child support order shall be the presumptive amount of child support as increased or decreased by deviations."). This scheme works sensibly only if the upward and downward deviations are applied not to the presumptive child support amount for each parent but to the presumptive "payment due to the custodial parent" from the noncustodial parent.

This does not mean, however, that the *final* child support order must require a payment from the noncustodial parent to the custodial parent. Particularly when the noncustodial parent's presumptive child support amount is low (as may occur when that parent's income is much lower than the custodial parent's), if the court applies one or more deviations that subtract from that amount, the end result may be that the payment due to the custodial parent is *negative* — which is another way of saying that the custodial parent must pay the noncustodial parent that amount to support the children. It is by this structured process that a trial court may exercise its discretion to

require a custodial parent to pay child support to a noncustodial parent. See Division 2 above.

In this case, the trial court's final order and the incorporated child support worksheet reference only one deviation — "a deviation for the increased parenting time of the Father in the amount of $272.00."[4] As discussed in Division 1, however, the division of parenting time in the final order made Father the *custodial* parent, and a "parenting time deviation" is defined as "a deviation allowed for the *noncustodial* parent based upon the *noncustodial* parent's court ordered visitation with the child." OCGA § 19-6-15 (a) (17) (emphasis added). Moreover, the order subtracted the $272 deviation from the $1,359 presumptive child support amount calculated for the custodial Father, rather than from the presumptive $233 payment "due to the custodial parent" from the noncustodial parent — Mother. Compare OCGA § 19-6-15 (b) (7)-(9). To confuse matters further, the deviation was framed not in terms of additional expenses attributable to *Father*'s parenting time with the children but rather the resources Mother needs for *her* parenting time, with the order stating that the "best interest of the children" is served by "deviation from the presumptive amount of child support as the same will allow Mother resources to maintain adequate housing and necessities while the children are in her care." See OCGA § 19-6-15 (i) (2) (K) (stating that a parenting time deviation requires "special circumstances [that] make the presumptive amount of child support excessive or inadequate due to extended parenting time as set forth in the order of visitation or when the child resides with both parents equally").

In sum, the evidence in this case might authorize the trial court to apply a parenting time deviation for *Mother* — or a nonspecific deviation, see OCGA § 19-6-15 (i) (3) — to reduce *Mother*'s $233 presumptive child support amount so much that the net result is that Father must pay child support to Mother. But in calculating that the custodial Father was required to pay the noncustodial Mother $1,087 in monthly child support, the court incorrectly started with *Father*'s presumptive amount and incorrectly applied a parenting time deviation available only to the noncustodial parent. The child support portion of the final order is therefore erroneous, and we must reverse that part of the order and remand the case with direction to the trial court to recalculate the child support obligation consistent with the statutory guidelines as explained in this opinion.

*Judgment affirmed in part and reversed in part, and case remanded with direction. All the Justices concur.*

---

[4] $272 is 20 percent of Father's $1,359 presumptive child support amount.

DECIDED OCTOBER 7, 2013.

*Charles D. Joyner*, for appellant.
*Nelle M. Funderburk, Debra W. Hale*, for appellee.